**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS (CENTRAL DIVISION)**

| | |
|---|---|
| LESLIE BARTOLOMEI<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL REPUBLICAN<br>CONGRESSIONAL COMMITTEE, *et al.*<br><br>Defendants. | No. 4:20-cv-271-BRW |

<u>**DEFENDANT NRCC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**</u>
<u>**PLAINTIFF'S COMPLAINT**</u>

Defendant, National Republican Congressional Committee, hereby moves that Plaintiff's

Amended Complaint be dismissed for failure to state a claim.

**INTRODUCTION**

On March 27, 2020, Plaintiff filed a facially deficient Amended Complaint alleging certain

violations under the Telephone Consumer Protection Act ("TCPA"). Plaintiff alleges that she

improperly received four text messages from Defendants and, therefore, is seeking statutory

damages, punitive damages, compensatory damages, and injunctive relief. The Plaintiff has failed

to state a claim under Rule 12(b)(6) because: (1) Plaintiff failed to properly allege that an

"automatic telephone dialing system" ("ATDS" or "autodialer") was used by the NRCC to place

the text messages; (2) Plaintiff improperly pleaded a request for punitive damages because there

is no proper allegation of intentional conduct; (3) the prohibition found in 47 U.S.C. 227(b)(1) is

an unconstitutional infringement of First Amendment rights because it is a content-based

restriction on speech, is both under and overinclusive, and is unconstitutional as-applied to the

NRCC. Therefore, for the reasons that follow, this Court should dismiss Plaintiff's claims.

## I.      THE PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER RULE 12(b)(6).

### A. Plaintiff's Amended Complaint Fails to State a Claim Because It Alleges No Plausible Set of Facts That Would Show the NRCC's Communications Were Sent Using an ATDS.

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While "detailed factual allegations" are not required, Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To wit, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Id.*

While the Court must accept all *factual* allegations as true, that "tenet … is inapplicable to legal conclusions." *Id.* Critically, the *Iqbal* standard requires a plaintiff to provide factual allegations that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. The claim must be more than conceivable and, instead, must be facially plausible. *See Twombly*, 550 U.S. at 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Here, there are no allegations, taken as true, that create the *reasonable* inference that the NRCC used an autodialer.

The Amended Complaint alleges multiple violations of 47 U.S.C. section 227. As pleaded, a violation under the TCPA occurs when:

> [A]ny person within the United States … make[s] any call … using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service … unless such call is made solely to collect a debt owed to or guaranteed by the United States.

> 47 U.S.C. § 227(b)(1)(A)(iii). Therefore, for the Plaintiff to make out a cause of action under section 227(b)(1) of the TCPA, she "must allege that the defendant (1) called a cellular

telephone number; (2) used an automatic telephone dialing system … to do so; and (3) lacked the plaintiff's prior express consent." *Aguilar v. Ocwen Loan Servicing, LLC*, 289 F. Supp. 3d 1000, 1005 (D. Minn. 2018). Should the Plaintiff fail to properly plead any of those elements, she has failed to state a claim upon which relief can be granted under Rule 12(b)(6). *See id.* at 1005-06.

Of specific importance to analyzing Plaintiff's pleading failure is the term "automatic telephone dialing system" ("autodialer" or "ATDS"). ATDS is a specifically defined term within the TCPA. The Act defines an autodialer as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).[1] At the motion to dismiss stage, the Plaintiff must properly allege sufficient facts that, taken as true, could lead to the reasonable inference that the NRCC used an ATDS. In this respect, Plaintiff has failed to "nudge[] [her] claim[] across the line from conceivable to plausible," and therefore the Amended Complaint should be dismissed. *Twombly*, 550 U.S. at 570.

The Amended Complaint contains two paragraphs that are apparently meant to allow the court to draw a reasonable inference that the system used by the NRCC was an autodialer. *See* Am. Compl. ¶¶ 16, 18, ECF No. 4. First, paragraph 18 states that "[t]he text messages placed to Plaintiff's cellular telephone were placed via an 'automatic telephone dialing system,' ('ATDS') as defined by 47 U.S.C. § 227(a)(1)." Am. Compl. ¶ 18. This is simply the naked assertion of an element of a TCPA violation which is plainly insufficient to state a claim under *Twombly*, *Iqbal*, and their progeny. *See, e.g.*, *Iqbal*, 556 U.S. at 678.

Second, paragraph 16 states

---

[1] The system used by the NRCC is not an ATDS as defined by the act. *See Gadelhak v. AT&T Servs.*, 950 F.3d 458, 463-69 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1305-1312 (11th Cir. 2020). No language in this brief should be construed as an admission that the NRCC uses an autodialer because it most certainly does not.

> When dialing back the number above, one is greeted with an automated voice that states 'the number you've dialed cannot be completed as dialed.' The call is then automatically disconnected. Such an automated response is indicative of technology that constitutes an 'automatic telephone dialing system,' ('ATDS') as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).

Am. Compl. ¶ 16. This threadbare allegation is fundamentally deficient in that: (1) an automated response to an *incoming* call to an alleged autodialer is indicative of *nothing* under the TCPA; and (2) even if an automated response to an incoming call was indicative of an ATDS, there is no allegation as to when the incoming calls were made and therefore it is impossible to connect the allegation to the NRCC.

   i.   *An Automated Response to <u>Plaintiff's</u> Telephone Call Is Not Indicative of an ATDS.*

The standard mandated by *Iqbal* declares that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Zean v. Fairview Health Servs.*, 858 F.3d 520, 525 (8th Cir. 2017). Nothing alleged in the Amended Complaint—that is not itself a legal conclusion—indicates the presence of an autodialer, or that any automated system was used to make calls by the NRCC. Specifically, even accepting as true that someone called the alleged offending telephone numbers at some unknown time, and that they received an automated response to those calls, does not show that an autodialer sent the text messages.

The TCPA is wholly silent on the subject of *incoming* telephone calls to the number of an alleged autodialer. *See generally* 47 U.S.C. § 227. Plaintiff's allegation that an "automated response" to an incoming call is "indicative" of ATDS technology is therefore unsupportable on the face of the Amended Complaint.

Several courts faced with allegations that are far more indicative of automated dialing technology then Plaintiff's allegations have dismissed claims for failure to properly allege that an

autodialer was used. *See, e.g.*, *Margulis v. Generation Life Ins. Co.*, <u>91 F. Supp. 3d 1165, 1166,</u> <u>1168</u> (E.D. Mo. 2015) (finding that plaintiff's "vague allegations" including the allegation that the system was an ATDS because there was a "delay after answering and before hearing anyone speak" were "essentially threadbare legal conclusions."); *Friedman v. Massage Envy Franchising, LLC*, No. 3:12-cv-02962-L-RBB, <u>2013 U.S. Dist. LEXIS 84250, at *6-7</u> (S.D. Cal. June 13, 2013) (dismissing claims based on the allegation that the incoming text messages were "generic and impersonal" which was insufficient to make the claims plausible because "[i]t [wa]s just as conceivable that the text messages were done by hand, or not using an ATDS."); *Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H (WVG), <u>2012 U.S. Dist. LEXIS 91030, at *9</u> (S.D. Cal. June 18, 2012) (dismissing plaintiffs' complaint because they failed to properly allege the defendants used an ATDS).

Plaintiff's case is even weaker than the cases listed above because it is at least conceivable that a delayed response when answering a phone call, *see Margulis*, <u>91 F. Supp. 3d at 1166</u>, or an allegation of "generic or impersonal" text messages, *see Friedman*, <u>2013 U.S. Dist. LEXIS 84250</u> <u>at *6</u>, is related to an autodialer. However, an incoming phone call to an alleged autodialer number that results in an automated message is not even conceivably related to an automatic telephone *dialing* system.

> ii. *There is No Nexus Between the Automated Response Allegation and NRCC's Alleged Conduct.*

Even if one assumes that an automated response to an incoming call is indicative of an ATDS system, there is nothing in the Amended Complaint that, taken as true, ties the automated response to NRCC's alleged conduct. Paragraph 18 alleges that when a call is made to the listed numbers, an automated message is played. However, there is no timing nexus between Plaintiff's call and the allegedly improper text messages. In other words, even accepting as true that the

alleged conduct occurred, and that an automated response to an incoming call is indicative of an

ATDS, there is nothing on the face of the Amended Complaint to temporally link the automated

response to the Defendant.

Therefore, due to Plaintiff's significant pleading deficiencies, she has failed to state a claim

under the TCPA.

### B. Plaintiff's Amended Complaint Fails to State a Claim as to Punitive Damages Because There Was No Intentional Conduct.

In addition to the statutory damages provided for by the TCPA, the Plaintiff attempts to

add on punitive damages for intentional conduct because she alleges that the "NRCC … [was]

instructed to 'STOP' sending Plaintiff text messages but continued to do so." *See* Am. Compl. ¶

48. However, the face of the Amended Complaint contradicts Plaintiff's assertion. In the context

of Plaintiff's pleading, to assert a claim of punitive damages Plaintiff must allege intent. *See* Ark.

Code Ann. § 16-55-206.

Paragraph 13 contains the content of the alleged fourth text message. *See* Am. Compl. ¶ 13.

Contained in that quoted text is a link to a website that invites a donation.[2] The website contains

not one reference to the NRCC. *See* Ex. 1.[3] The website instead references "Scalise for Congress"

as the one for whom the donation is sought. *See* Ex. 1 ("Your contribution will benefit Scalise for

Congress."). The website also refers to WinRed—which is an entity that provides websites that

accept candidate donations and has nothing to do with sending text messages. Irrespective of who

sent the fourth text message, it is clear from the face of the website that the NRCC had no

---

[2] A copy of the contents of this website is attached as Exhibit 1. The printed copy differs from the online version (e.g. different formatting and missing some pictures). The Court is encouraged to go to the link contained in Paragraph 13 of the Amended Complaint to see the content as it exists online.

[3] The website included in Paragraph 13 is "necessarily embraced" by the Amended Complaint and are not a "matter outside the pleadings" for the purposes of 12(b)(6). *See Zean*, 858 F.3d at 526 ("[D]ocuments necessarily embraced by the complaint are not matters outside the pleading."); *see also Steinhoff*, 2014 U.S. Dist. LEXIS 38293 at *5 (considering, among other things, an "audio recording" presented by defendants which was not expressly referenced in the complaint because it was "necessarily embraced by the pleadings").

involvement.[4] Therefore, because there is no plausible allegation of intentional conduct, the request for punitive damages should be dismissed. *See Zean v. Fairview Health Servs.*, 149 F. Supp. 3d 1129 (D. Minn. 2016) (dismissing TCPA claim with prejudice because documents embraced by the pleadings contradicted plaintiff's lack-of-consent allegation), *aff'd* 858 F.3d 520 (8th Cir. 2017); *Encompass Ins. Co. v. Wills*, 2020 Ark. App. 257, *6-7 (Ark. Ct. App. 2020) (noting the dismissal of a claim for punitive damages).

### C.  The TCPA's Cellular Telephone Call Ban Violates the Free Speech Clause of the First Amendment.

The government debt exception to TCPA's cellular telephone call ban is a content based speech restriction that is not severable from the section as a whole.[5] The First Amendment declares, in no uncertain terms, that "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. At the core of the First Amendment's protection is political speech. *See 281 Care Comm. v. Arneson*, 766 F.3d 774, 784 (8th Cir. 2014). This is because "[p]olitical speech is the primary object of First Amendment protection and the lifeblood of a self-governing people." *Id.* (quoting *McCutcheon v. FEC*, 572 U.S. 185, 228 (2014) (Thomas, J. concurring)) Accordingly, "[a]lthough not beyond restraint, strict scrutiny is applied to any regulation that would curtail it." *Id.* (quoting *Republican Party v. White*, 416 F.3d 738, 749 (8th Cir. 2005) (en banc)).

---

[4] The Federal Election Campaign Act requires certain disclaimers on fundraising websites that identify the entities for whom funds are being raised. *See, e.g.*, 52 U.S.C. § 30120; 11 C.F.R. § 110.11. No required disclaimer identifying the NRCC appears at the identified web link because it was not responsible for the fourth text message.

[5] The fact that the government debt exception is an unconstitutional content based restriction on speech is non-controversial as numerous courts have declared it as such. *See, e.g.*, *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019) (government debt exception is content based and fails strict scrutiny), *cert. granted sub. nom. Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 812 (2020); *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019) (same), *cert. pending*, No. 19-511 (Oct. 17, 2019); *Hand v. Beach Entm't KC, LLC*, No. 4:18-cv-00668-NKL, 2019 U.S. Dist. LEXIS 188944 (W.D. Mo. Oct. 31, 2019) (government debt exemption is content based and fails strict scrutiny); *Doohan v. CTB Inv'rs, LLC*, No. 4:19-cv-00111-NKL, 2019 U.S. Dist. LEXIS 207574 (W.D. Mo. Dec. 3, 2019) (same).

"Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints." *Citizens United v. FEC*, 558 U.S. 310, 340 (2010). Accordingly, content based speech restrictions are subject to strict scrutiny and presumptively unconstitutional. *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015); "It is rare that a regulation restricting speech because of its content will ever be permissible." *United States v. Playboy Entm't Group*, 529 U.S. 803, 818 (2000). A regulation is content based if it requires "enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred." *McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (internal quotations omitted); *see also Reed*, 135 S. Ct. at 2227.

<em>i.</em> <em>The TCPA's Cellular Telephone Call Ban Is Content Based.</em>

The TCPA prohibits the making of any call to a cellular telephone when using an ATDS or an artificial or prerecorded voice. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Calls that are made "solely to collect a debt owed to or guaranteed by the United States" are exempted from this prohibition. *Id.*

If the face of a statute "draws distinctions based on the message a speaker conveys," then the restriction is content-based. *Reed*, 135 S. Ct. at 2227. The government debt exception is a content based prohibition because it requires "enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred." *McCullen*, 573 U.S. at 479 (internal quotations omitted). Examples of facially content based statutes include those that regulate speech by particular subject matter. *See id.* The TCPA's cellular telephone ban is an example of a content based statute.

If the content of the message in a call made to a cellular telephone is solely to collect a debt owed to the United States, then the message is covered under the exception. *See* 47 U.S.C.

§ 227(b)(1)(A)(iii). But if the message discusses collecting a debt owed to the United States *and* urges the listener to call their Congressman to support federal debt legislation, then that message would violate the cellular telephone ban.[6] *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 166 (4th Cir. 2019), *cert. granted sub. nom. Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 812 (2020).[7]

The FCC has even confirmed that the TCPA's cellular telephone ban is content based. The FCC ruled that "content that includes marketing, advertising, or selling products or services, and other irrelevant content … transforms the call from one solely for the purpose of debt collection into a [prohibited] call." *In re Matter of Rules Implementing the Tel. Consumer Prot. Act of 1991*, 31 FCC Rcd. 9074, 9087 (F.C.C. Aug. 11, 2016). The cellular telephone ban is therefore presumptively unconstitutional and can be justified only under strict scrutiny. *See Reed*, 135 S. Ct. at 2226.

## ii. The Government Lacks A Compelling Interest.

To demonstrate that an interest is compelling is a demanding standard. *See Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 799 (2011). The Government and the Plaintiff must demonstrate that the legislature actually identified some recognizable problem that its content based political call ban was enacted to specifically resolve. *See id.* The Government and the Plaintiff cannot rely on any hypothetical interest or any interest invented after enactment to justify the TCPA's content

---

[6] Compounding the TCPA's content based speech restriction is that the statute vests the FCC with the power to exempt additional speech based on its content from the TCPA's ban against calls to residential landline phones. *See* 47 U.S.C. §§ 227(b)(1)((B) *and* (b)(2)(B)(i) (exempting, for example, calls that are not commercial in nature). This exemption too is based upon the communicative content of the message—commercial or non-commercial—and requires enforcement authorities to examine the content of the message. *See McCullen*, 573 U.S. at 479; *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 325 (2002) ("Granting waivers to favored speakers (or, more precisely, denying them to disfavored speakers) would of course be unconstitutional.").

[7] A motion is forthcoming to stay this case pending the outcome of the Supreme Court's resolution of the issues in *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 812 (2020) (oral argument scheduled May 6, 2020), which directly address the constitutionality of the parts of the TCPA statute that are at issue in this case.

based speech ban. *United States v. Virginia*, 518 U.S. 515, 533 (1996) ("The justification must be genuine, not hypothesized or invented *post hoc* in response to litigation.").[8]

   a. *The Eighth Circuit Has Concluded That The Residential Privacy Interest Is Not Compelling.*

   Congress identified residential privacy as an interest in enacting the TCPA. *See* H.R. Rep. No. 102-317, at 6 (1991) ("The purpose of the bill (H.R. 1304) is to protect residential telephone subscriber privacy rights"); *see also* S. Rep. No. 102-178, at 1, 9 (1991). However, the Supreme Court has never recognized residential privacy as a compelling interest and the Eighth Circuit has rejected residential privacy as a compelling interest. *See Kirkeby v. Furness*, 92 F.3d 655, 659 (8th Cir. 1996) ("Although the interest asserted by Fargo (protecting residential privacy and tranquility) is a 'substantial' one, the Supreme Court has never held that it is a compelling interest, *and we do not think that it is*." (emphasis added) (quoting *Frisby v. Schultz*, 487 U.S. 474, 488 (1988)) (citing *Carey v. Brown*, 447 U.S. 455, 465 (1980))). Accordingly, an interest in residential privacy is not a compelling interest.

   b. *Plaintiff's Complaint Does Not Allege That She Received The Alleged Text Messages In Her Home.*

   Congress's residential interest is not even implicated in this Complaint. The Plaintiff failed to allege that she was inside her home when she allegedly received the text messages. *See Salcedo v. Hanna*, 936 F.3d 1162, 1170 (11th Cir. 2019) (stating that the residential privacy interest was not applicable to plaintiff's claim because the plaintiff did not allege that he was home when he

---

[8] Even under intermediate scrutiny, the Government and Plaintiff may rely solely on the interests put forward by Congress and not a *post hoc* rationale. *Edenfield v. Fane*, 507 U.S. 761, 768 (1993). Further, other than a passing reference, Congress did not rely on the uninvited costs theory to justify the cellular telephone ban. Accordingly, neither the Government nor Plaintiff here may assert it to justify the statute, especially as applied to "political" calls.. *See, e.g.*, H.R. Rep. No. 102-317, at 20 (1991); S. Rep. No. 102-178, at 4 (1991); TCPA, Pub. L. 102-243, § 2, 105 Stat. 2394, 2394-95  (1991); *see also* H.R. Rep. No. 102-317, at 10, 13-14 (1991) (concluding that calls from "charitable and political organizations" were "less of a problem than commercial calls," and stating that the cellular telephone ban was focused on prohibiting unsolicited telemarketing calls).

received the alleged text message). Plaintiff cannot claim invasion of residential privacy when she failed to allege that she was in her home when she received the alleged texts and when she alleges that the text messages were political.[9]

> ### c.   *The TCPA's Cellular Telephone Ban Is Both Underinclusive and Overinclusive.*

Moreover, concerning the residential privacy interest, the cellular telephone call ban is underinclusive. Statutes are not permitted to be "underinclusive," meaning that a statute cannot leave appreciable damage to the Government's purported interest unprohibited. *Reed*, 135 S. Ct. at 2232. Statutes that are underinclusive do appreciable damage to the Government's asserted interest and damage the Government's credibility for why it established the cellular telephone ban in the first place. *See City of Ladue v. Gilleo*, 512 U.S. 43, 52 (1994) ("Exemptions from an otherwise legitimate regulation … may diminish the credibility of the government's rationale for restricting speech in the first place."); *Republican Party v. White*, 536 U.S. 765, 780 (2002).

When the TCPA was enacted, Congress was primarily concerned with commercial calls, not political or charitable calls. *See* H.R. Rep. No. 102-317, at 10, 13-14 (1991) (Stating that the cellular telephone ban applied to unsolicited telemarketing calls, and noting that "[c]omplaint statistics show that unwanted commercial calls are a far bigger problem than unsolicited calls from political or charitable organizations."). In fact, the FCC has repeatedly determined that political and charitable calls "do not adversely affect the privacy interests of residential subscribers." *In re*

---

[9] Even if the Plaintiff alleged that she was in her home when she allegedly received the text messages, she also alleged that the received text messages were "political" in nature. Am. Compl. ¶¶ 11, 17. Based on the Amended Complaint itself, the text messages involved speech that is at the core of the First Amendment's protection. *See 281 Care Comm*, 766 F.3d at 784. Congress admitted that it was commercial calls, rather than political calls, that were the "far bigger problem" in intruding residential privacy. *See* H.R. Rep. No. 102-317, at 16-17 (1991). The FCC has repeatedly confirmed Congress's judgment stating that political calls "do not adversely affect the privacy interests of residential subscribers." *In re Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8782 (FCC Sep. 17, 1992) This is why political and charitable calls—non-commercial calls—were exempted. 47 U.S.C. § 227(b)(2)(B)(i); 47 C.F.R. § 64.1200(a)(2)(ii).

*Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8782 (FCC Sep. 17, 1992). Yet, with the government debt exception, the Government does appreciable damage to the very interest it asserts and makes its asserted interest in protecting residential privacy pretextual.

In addition to the statute being underinclusive, under the Government's and Plaintiff's nuisance interest, the cellular telephone call ban is also overinclusive. The nuisance that Congress identified was telemarketing calls and debt collection calls, not political calls. That is why non-commercial calls are exempted. 47 U.S.C. § 227(b)(2)(B)(i). But the cell phone ban covers *all* calls, except certain debt collection calls. The cell phone ban prohibits far more speech than is necessary to protect the Government's asserted interest and is therefore overinclusive. *See Republican Party*, 536 U.S. at 775; *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1310 (11th Cir. 2020).

> iii.  *The Government's Means—A Ban On Nearly All Calls To Cellular Telephones—Is Not Narrowly Tailored.*

"A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby*, 487 U.S. at 485 (internal quotations omitted). This means that the statute cannot be overinclusive by "unnecessarily circumscrib[ing] protected expression." *Republican Party*, 536 U.S. at 775. "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *Playboy Entm't Grp*., 529 U.S. at 813. Additionally, "[w]hen the government restricts speech, the government bears the burden of proving the constitutionality of its actions." *Id.* at 816. "When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals." *Id.*

a.   *Congress Has Less Intrusive Means Available To It Than A Complete Ban.*

Rather than *banning* calls to cellular telephones and assuming that a reduction in autodialed calls is a compelling interest, Congress could have enacted a more narrowly tailored statute. For example, in finding that Arkansas's automated call ban was unconstitutional, the federal court in *Gresham* identified a number of less-restrictive alternatives to outright bans on political automated calls that would achieve Arkansas's interests in residential privacy and public safety. The court referenced sixteen states with time-of-day restrictions on automated calls—fifteen states and the District of Columbia had requirements that the automated telephone dialing system be disconnected within a certain number of seconds of the call's termination, and eight states with prohibitions on calls to emergency lines. *Gresham v. Rutledge*, 198 F. Supp. 3d 965, 972 n.17-19 (E.D. Ark. 2016). These types of limitations applicable to all automated calls would offer a less restrictive alternative than an outright ban on any automated call made by a disfavored speaker. There is nothing in the TCPA's statutory history explaining why it is permissible for non-commercial calls to be made to residential landlines during certain hours, but the same call cannot be made to cellular telephones. *See* 47 U.S.C. § 227(b)(2)(B)(i); 47 C.F.R. § 64.1200(c)(1) (imposing time-of-day limitations on non-commercial calls to residential landlines). Congress could have enacted a time-of-day limitation to protect residential privacy, *i.e.* times when people are most likely outside of the home. This, and not an all-out ban, would protect the interest in residential privacy, which was one of the concerns Congress adduced when justifying the TCPA.

     *iv.*     *This Court Should Declare TCPA's Cellular Telephone Ban Unconstitutional.*

Severing the government debt collection exception will not alleviate the constitutional harm. In fact, severing the debt exception will make the TCPA's cellular telephone call ban more unconstitutional.[10]

*First*, "[g]enerally speaking, when confronting a constitutional flaw in a statute, [the Supreme Court] tr[ies] to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010) (internal quotations omitted). But here, Congress enacted a cellular telephone call *ban*. Removing the government debt exception will result in restricting *more* speech, not less. Removing the government debt exception still leaves intact the unconstitutional ban. And this ban, even without the government debt exception, fails strict scrutiny. *See supra* sections I.C.i. and I.C.ii.; *see Reed*, 135 S. Ct. at 2232.

*Second*, the U.S. Supreme Court's First Amendment jurisprudence, even under its more forgiving content-neutral jurisprudence, "operate[s] to protect speech, not to restrict it." *Reed*, 135 S. Ct. at 2229 (internal quotations omitted). A ruling that severs the government debt exception is fundamentally contrary to this principle.

*Third*, a ruling severing the government debt exception dissuades future speakers from filing suit. It makes no sense for a speaker to sue, successfully litigate their claims, and still be prohibited from speaking. The Supreme Court seeks not to discourage litigation but to incentivize litigation to vindicate constitutional rights. *See Lucia v. SEC*, 138 S. Ct. 2044, 2055 n.5 (2018).

*Fourth*, in the First Amendment context, the Supreme Court has not limited itself to declaring the content based exceptions unconstitutional. Instead, the Supreme Court has uniformly

---

[10] For additional arguments against severability, *see generally* Br. of Resp'ts 34-52, *Barr v. Am. Ass'n of Political Consultants*, No. 19-631(March 25, 2020).

declared the offending statute unconstitutional. *See, e.g., Reed*, 135 S. Ct. at 2231-32 (declaring the Town of Gilbert's Sign Code unconstitutional and not severing the statute); *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 190 (1999) (declaring unconstitutional a broadcast statute that prohibited some but not all broadcast advertising about lotteries and casino gambling without engaging in severing analysis); *Cincinnati v. Discovery Network*, 507 U.S. 410, 430-31 (1993) (declaring unconstitutional Cincinnati's statute prohibiting a whole class of speech from sidewalks and not engaging in severing analysis); *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 227 (1987) (rejecting Arkansas's contention that the plaintiff lacked standing under the redressability prong of standing because "it would effectively insulate underinclusive statutes from constitutional challenge" and stating that several Supreme Court opinions had rejected arguments similar to Arkansas's); *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 592-93 (1983) (declaring unconstitutional a Minnesota tax statute that the court ruled was facially discriminatory because it targeted the press and, specifically, a small group of newspapers and did not engage in any severing analysis); *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 795 (1978) (declaring Massachusetts statute unconstitutional that prohibited certain banks and corporations from making expenditures to influence a vote on referendums without engaging in severing analysis).

To sever the exception would involve the Court in broadening the statute's prohibition of speech. Striking the cellular telephone ban protects the freedom of speech. Accordingly, this Court should declare the TCPA's cellular telephone ban unconstitutional under the First Amendment.

## **CONCLUSION**

For the aforementioned reasons, this Court should dismiss Plaintiff's Amended Complaint for failure to state a claim.

Dated: May 4, 2020                    RESPECTFULLY SUBMITTED,

Jason B. Torchinsky
Jonathan Lienhard*
Shawn T. Sheehy*
Phillip M. Gordon*
Holtzman Vogel Josefiak Torchinsky PLLC
45 N. Hill Dr., Suite 100
Warrenton, VA 20186
Telephone: (540) 341-8808
Facsimile: (540) 341-8809
jtorchinsky@hvjt.law
ssheehy@hvjt.law
jlienhard@hvjt.law
pgordon@hvjt.law
*pro hac vice motions to be filed

And

John E. Tull III (84150)
R. Ryan Younger (2008209)
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, AR  72201
Telephone: (501) 379-1700
Facsimile: (501) 379-1701
jtull@qgtlaw.com
ryounger@qgtlaw.com

*Attorneys for National Republican Congressional Committee*